

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00376-CR

**SAMUEL UKWUACHU,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2014-1202-C2

## MEMORANDUM  OPINION

Samuel Ukwuachu appeals from a conviction for the offense of sexual assault. TEX. PENAL CODE ANN. § 22.011.  In six issues, Ukwuachu complains that his due process rights were violated due to the presentation of false testimony relating to cell phone records of his roommate during the State's cross-examination of his roommate's friend (issue one) and his roommate (issue two); that the indictment was defective; that evidence of an extraneous offense was improperly admitted; that his due process rights were

violated due to an abuse of the grand jury process by the State; and that text messages between the victim and a friend of hers the night of the alleged offense were improperly excluded.[1]  The only issues remaining for us to address are Ukwuachu's complaints regarding the admission of the extraneous offense and the abuse of the grand jury process.  Because we find no reversible error as to those issues, we affirm the judgment of the trial court.

**EXTRANEOUS OFFENSE EVIDENCE**

Ukwuachu complains that the trial court abused its discretion by allowing the admission of evidence relating to his relationship with a prior girlfriend pursuant to Rules 403 and 404(b) of the Rules of Evidence.  During cross-examination, Ukwuachu testified that he respected women and that he had never hit a woman before.  Ukwuachu objected that the evidence was not relevant, which the trial court overruled, and Ukwuachu was given a running objection as to relevance.

The State called the prior girlfriend to testify, during which time she testified that she and Ukwuachu had been in a dating relationship and during that time, he had hit her

---

[1] We initially reversed the judgment based on the issue relating to the text messages; however, the Court of Criminal Appeals reversed our judgment and remanded this proceeding for us to consider Ukwuachu's other issues.  *See Ukwuachu v. State,* No. 10-15-00376-CR, 2017 Tex. App. LEXIS 2432, 2017 WL 1101284 (Tex. App.—Waco March 22, 2017) (mem. op., not designated for publication) (*Ukwuachu I*) (*reversed by Ukwuachu v. State*, 2018 Tex. Crim. App. Unpub. LEXIS 442, 2018 WL 2711167 (Tex. Crim. App. June 6, 2018) (*Ukwuachu II*).  In our second opinion, we addressed the issues relating to the false testimony and the defective indictment.  *See Ukwuachu v. State*, No. 10-15-00376-CR, 2019 Tex. App. LEXIS 5783, 2019 WL 3047342 (Tex. App.—Waco July 10, 2019) (*Ukwuachu III*) (*reversed by Ukwuachu v. State*, 613 S.W.3d 149 (Tex. Crim. App., Nov. 18, 2020) (*Ukwuachu IV*).  Neither Ukwuachu nor the State filed new briefs after the second reversal, therefore, we are proceeding on the same briefs filed prior to our second opinion.

once, choked her briefly with one hand, and prevented her from leaving an apartment when she wanted to leave. Ukwuachu did not object to the prior girlfriend's testimony other than several objections that the State was leading the witness.

The State argues that Ukwuachu did not preserve this complaint because his only objection was to relevance, and he did not object to the admission of the prior girlfriend's testimony while she was testifying other than the leading objections. A trial objection that does not comport with the issue raised on appeal preserves nothing for review. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1999) (op. on reh'g); *see* TEX. R. APP. P. 33.1(a). Ukwuachu's trial objection was based solely on relevance and did not preserve a Rule 403 or 404(b) objection for our review. Accordingly, we overrule this issue.

### ABUSE OF THE GRAND JURY

Ukwuachu complains that his due process rights were violated by the State's improper use of the grand jury to intimidate a witness at trial. Ukwuachu's roommate, Tagive, had initially given a written statement approximately six weeks after the offense occurred in which he claimed to be in the apartment asleep during the time of the offense. Presumably because the State wanted to discredit Tagive's statement, the prosecutor and an investigator with the district attorney's office had attempted to interview Tagive shortly before trial, but Tagive refused to talk to them. The prosecutor then subpoenaed Tagive, an Australian citizen, to testify before the grand jury before trial. Tagive failed to appear before the grand jury, which resulted in a writ of attachment being issued. Tagive

was taken into custody pursuant to the writ of attachment and appeared before the grand jury a short time later pursuant to a second grand jury subpoena.

Tagive was questioned before the grand jury by one of the prosecutors that tried the instant case regarding Tagive's knowledge of the events that occurred the night of the offense. From his testimony before the grand jury, the State was also able to procure Tagive's cell phone records and the phone numbers of others that Tagive communicated with in the time surrounding the offense for purposes of cross-examination of Tagive at trial. The contents of Tagive's cell phone records, which included tower locations, were alluded to repeatedly during the State's cross-examination of Tagive, as the State contended that the records showed that Tagive was in another location and was not asleep in the apartment where the offense occurred although he had previously stated that he was.

During the trial, after the State received the cell phone records of Tagive, the prosecutor that questioned Tagive before the grand jury approached Tagive and his attorney prior to Tagive testifying on Ukwuachu's behalf. According to Tagive's affidavit attached to his motion for new trial, the prosecutor informed Tagive that he had Tagive's cell phone records which showed that his prior statements regarding his location and actions the night of the offense were false. According to Tagive, the prosecutor stated that if Tagive testified the same as he had before the grand jury, he would be charged with two counts of aggravated perjury. The prosecutor gave Tagive and his attorney the

opportunity to look at the phone records.

After this conversation, the prosecutor informed Ukwuachu and the trial court that Tagive might not be willing to testify because he might be asserting his Fifth Amendment right against incrimination and informed Ukwuachu that he had Tagive's cell phone records. At Ukwuachu's request, the trial court recessed the trial for the day to give Ukwuachu time to review the records.

The next day, Ukwuachu sought a motion in limine as to the cell phone records and objected to their admission into evidence because the records were not authenticated and had not been on file for fourteen days. The trial court excluded the cell phone records from evidence but stated that it would allow questions about cell phone calls. No ruling was made as to the motion in limine.

Tagive then testified before the jury that he had been in the apartment during the times that the offense was alleged to have taken place and that he would have heard it if the victim screamed as she had testified. The State made reference to the cell phone records and alluded to their contents, including that Tagive was "across town" or making calls at times when Tagive contended that he was in the apartment asleep, during its cross-examination of Tagive. The State was able to establish some amount of confusion by Tagive as to the exact times that things took place that night, but he stood firm on his contentions regardless of what the records showed, except for answering "Yes, sir" when asked if he knew that the State had the phone records and that they showed he was across

town or making calls at the relevant times. The State also argued that the cell phone records showed that Tagive was untruthful in its closing argument.

Ukwuachu filed a motion for new trial, alleging in relevant part that the State had abused the grand jury process and that the use of the cell phone records had created a false impression as to Tagive. An affidavit executed by Tagive was attached to the motion, which set forth his contention that the prosecutor had threatened him with the aggravated perjury charges but that he decided to testify after he and his attorney determined that the times shown in the cell phone records actually supported his prior testimony. Tagive stated that the "threats" by the prosecutor were "unnerving" and caused him "considerable stress" during his testimony.

## PRESERVATION

As a preliminary matter as to this issue, the State argues that this alleged error was not preserved at trial, and Ukwuachu concedes that he did not object on this basis during the trial. On appeal, Ukwuachu argues that the error was of such character that an objection was not required, because a violation of due process is a nonwaivable, nonforfeitable systemic requirement. *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *rev'd on other grounds*, 891 S.W.2d 267 (Tex. Crim. App. 1994). Pursuant to *Marin*, a violation of due process need not be preserved in the trial court to be raised on appeal. *See Marin*, 851 S.W.2d at 279. The State disagrees with this characterization of *Marin* and contends that preservation was required. Ultimately, because of our holding below, it is

not necessary for us to determine if the error was required to be preserved or if it was a nonforfeitable systemic requirement, so we will not decide that issue here.

## DUE PROCESS VIOLATION

Ukwuachu contends that the grand jury subpoena was issued solely for the purpose of establishing what his testimony would be at trial because Tagive was unwilling to speak with the State's investigators or the prosecutor prior to trial, which was an improper use of the grand jury process and constituted a violation of his due process rights. Further, Ukwuachu contends that the prosecutor's alleged threats of prosecution for aggravated perjury based on the cell phone records procured because of the forced grand jury testimony of Tagive were an attempt to force Tagive not to testify but ultimately led to Tagive's testimony being tentative and "unnerve[ed]" at trial.

Generally, there is a presumption of regularity attending the purported acts of a grand jury. *State v. Huse*, 491 S.W.3d 833, 845 (Tex. Crim. App. 2016) (internal citations omitted). It is the defendant's burden to overcome the presumption. *Id*. However, there are two instances in which it is improper to use the grand jury: (1) as a subterfuge to compel an investigative interview in a prosecutor's office and (2) for the purpose of preparing an already pending indictment for trial. *See id.* However, if the State is investigating a different criminal offense, it is not improper for a grand jury to continue to investigate those other potential charges, and "if, in the course of such legitimate investigative efforts, the prosecutor obtains evidence that is relevant to the pending case,

it can use that evidence at trial." *Id.* (internal citations omitted).

As it relates to this issue, the record before the trial court at the motion for new trial consisted solely of the affidavit of Tagive and an expert who opined that the cell phone records were inaccurately used at trial as to the times the calls in question allegedly took place and as to the cell tower location information that the State also alluded to in its questions to Tagive. However, as has been determined by the Court of Criminal Appeals in *Ukwuachu IV*, any falsity or improper perception created by the State was not adequately presented in the record, in large part because the cell phone records themselves were never made a part of the record. *See Ukwuachu IV*, 613 S.W.3d at 155. ("[T]he record includes neither the phone records at issue nor any credible expert testimony identifying actual inconsistencies between those records and the witness testimony presented at trial.").

Similarly to the holding of the Court of Criminal Appeals in *Ukwuachu IV* as to false testimony, we find that the record before the trial court was insufficient for Ukwuachu to overcome the presumption of regularity of the grand jury process or to establish that the grand jury was impermissibly used to such a degree to establish any due process violation. The State's attorney argued during the hearing on the motion for new trial that there was a concern as to witness tampering which was the reason for the grand jury subpoena, and Ukwuachu did not address or refute this contention at that

hearing by presenting any evidence to the contrary.[2]   We have no record as to what

Tagive's grand jury testimony actually was to be able to ascertain if or how the State's

questioning before the grand jury was improper.[3]   Ukwuachu did not object to the State's

---

[2] Like the Court of Criminal Appeals recognized in *Ukwuachu IV*, we recognize the challenge to Ukwuachu's appellate counsel at the motion for new trial, who was different from his trial counsel, and agree with their observations that:

> [Appellate] Counsel indicated to the trial court during the hearing that he did not have access to the trial record, presumably because the record had not yet been prepared.  Thus, counsel would not have had any knowledge of the exact manner in which the State used the phone records to impeach Tagive at trial (e.g., actual questions asked and answers given regarding call times/locations).  Counsel's uncertainty in this regard is reflected in the record from the motion for new trial.

*Ukwuachu IV*, 613 S.W.3d at 154, n.8.  This uncertainty would presumably extend to the complaint regarding the grand jury as well.

[3] In a supplemental brief filed with this Court in anticipation of oral argument in this proceeding in support of his contention as to this issue, Ukwuachu cites to an article written by the prosecutors who tried the case months after the trial, in which they addressed their use of the grand jury as follows:

> The grand jury is a tool that prosecutors often underutilize.  It is a tool we rarely use in McLennan County, but we will use it with witnesses who refuse to talk to detectives during the initial investigation or when we suspect witness tampering, as in this case.  In front of the grand jury, we confirmed that the defendant's alibi was an outright lie that had been concocted long after the sexual assault and that … Tagive was nowhere near Ukwuachu's apartment that night.  He testified that the defendant had instructed him not to attend the grand jury proceedings (which might explain why it took a writ of attachment and some sheriff's deputies to secure his testimony).  We found out where he was and who he was with the evening of the rape and obtained his cell phone records and his friends' cell phone numbers. (This made a huge difference at trial because cell phone data showed that Tagive was not asleep the night of the assault, as he claimed, because he was making phone calls long after he said he was in bed.)  We also locked him into his story so that we could prepare his cross-examination well in advance of trial, effectively neutralizing him as a defense witness.  Hilary LaBorde and Robbie Moody, *Pushing Past Red Tape, Getting to the Truth*, THE TEXAS PROSECUTOR, Volume 46, No. 4, (July-August 2016).

To whatever degree this might support Ukwuachu's contentions, it was not part of the record considered by the trial court and therefore, cannot be considered by this Court in support of this issue, even if we were to find that it established the very violation of which he complains on appeal.  Certainly, Ukwuachu's trial counsel was aware that Tagive had testified before the grand jury before trial, and during trial was made aware that the State had procured Tagive's cell phone records as a result of that testimony.  However,

references to the grand jury testimony during the trial on this basis. Therefore, because Ukwuachu did not meet his burden to establish a due process violation against him occurred from the allegedly impermissible use of the grand jury, we overrule this issue.

**CONCLUSION**

Having found no reversible error as to Ukwuachu's remaining issues, we affirm the judgment of the trial court.

TOM GRAY<br>
Chief Justice

Before Chief Justice Gray,
    Justice Smith, and
    Justice Davis[4]
Affirmed
Opinion delivered and filed September 28, 2022
Do not publish
[CR25]



---

Ukwuachu's trial counsel did not request to review any of the relevant portions of the grand jury testimony even after that testimony was mentioned by the State in front of the jury during Tagive's cross-examination, nor did he request a continuance of more than a part of a day to review the cell phone records or to attempt to procure an expert to assist with his review of the cell phone records. Ukwuachu's trial counsel did not attempt to exclude the grand jury testimony or otherwise limit its use or the information received as a result of the testimony, which has led us to the conclusion that the record is inadequate to establish a due process violation from any improper use of the grand jury. However, our inability to consider the prosecutor's contentions that are outside the record in this proceeding should not in any way be construed as support for the State's use of the grand jury as set forth.

[4] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.